I've got a question for you about Kean. Yes. He says, you can't change my shift. I have to be home at the regular time to take care of my dad, my aged, elderly father. But his dad isn't home. He's in a facility. So I don't get it. Why does he need accommodation to take care of his dad by staying on the swing shift instead of moving to the day shift or any other shift? All right. His father has Parkinson's disease. His dad isn't there, right? He's in a nursing home. What he is doing is handling all of his father's financial affairs, which he does during the day because his father is heavily into investments and things of that nature. And he was dealing with his properties and his investments and handling those because his father was not capable of doing so. He had actually been on a swing shift so he can handle his father's affairs while he's still fresh in the morning, his financial affairs? Your Honor, my client has handled his father's financial affairs for years. It was never an issue. There was never a complaint about it. He never missed work because of it. So why can't he handle his father's affairs the way most people handle their personal financial affairs, either get up early if they're morning people and do it before work, or if they're afternoon or evening people, do it after work when he gets home? It begs the point, and this is the manner in which it begs the point. Mr. Keene asked for some time off under the Family Medical Leave Act to deal with some of his father's affairs that were pressing at that particular time. He waited 21 days for a response from the shipyard. Instead of the standard three days, you have your response back. He was told he couldn't have Family Medical Leave Act. He brought an action through his union. They were forced to give him his Family Medical Leave Act because he qualified under the act. And it was after that, within two, three weeks of his return from that, that they took him off swing shift and put him on day shift, knowing that he handled all of these affairs during day shift. What does it matter that he handles his father's financial affairs? I mean, Family Medical Leave Act, that's a mom whose child needs some medical care before the nurse comes into the house or something like that. Everybody has financial affairs to handle, and a job is a real nuisance because it interferes with doing the other stuff. But they don't pay you unless you do what they want you to do. That's true, except, see, the union there also has a process. We're normally a person who's requested swing shift. This happens to be a job most people don't want because it interferes with doing things with their family at night when the rest of the family is home. My client was the reverse. He liked the night work. Is the deal, is the problem, I have to take care of my father's financial affairs, not I have to take care of my father? Well, that's part of what he was doing, which was found to be valid Family Medical Leave Act. Look, I don't care what was found right now. I'm trying to identify what the family need is that needs to be accommodated, in your view. Well, at that point in time, he would also take care of his father at the nursing home. He'd go spend time with his father at the nursing home. And visiting the nursing home? I mean, you're not allowed to take care of a parent at a nursing home, usually. They have their own personnel. Actually, he did, and I think it's in his declaration that he assisted them with the care of his father in the nursing home. And I believe that's present. So, at any rate, part of what's going on here, though, is this is a retaliation case. And I want to make that point clear. He came back from the Family Medical Leave Act, which was forced on the shipyard, or which they accepted only after he took it through the union and pressed the issue. And it was then that they moved him from swing shift to day shift. Being a long-time swing shift person, the ship. Wasn't there another reason that at least the employer gave this person? This man had a very spotty history of showing up, and there were fewer people working on the swing shift than there were. Yep. Three on swing and ten on days. So if one person is missing on the day shift, it's like President Kennedy said, one dead monkey don't stop the circus. But if it's one out of three, it's a little bit different, isn't it? Well, I guess I don't see the difference when they didn't put somebody on the swing shift when the other employee was off for nine months. So you think this is evidence of discrimination against him for having applied to FMLA? Exactly. And the reality is they had to force somebody on swing shift. I think there's a declaration from a fellow employee in the record which he talked about asking that Keene be brought back to swing shift because he was working there alone because this other guy was off. And they wouldn't even let him go back. He had requested to go back. And there's a long-term practice of allowing employees to stay in the same shift and giving them notice that they're going to change things. This was done almost immediately after his return from FMLA. And on top of it, at that point he was given a document that specified his leave was going to be treated differently than anyone else's leave. Let me ask you something. Let's take your position that this is a retaliation for exercising an FMLA contract. This man's a federal employee. He's got a new title too. He doesn't have a private action for FMLA violation. Why does he have a right for retaliation if he doesn't have a right for private action? Because it's beneficial. Do you have a case that says that? I do not. I'm hoping we're going to write one. Realistically, this is a case where it happened right on top. It's a groundbreaking case, right? I believe it is on the issue that he should be able to bring an action for retaliation. That's why he filed it in the EEOC. He did also in the EEOC bring up that he had some other medical problems that were coming about because of this. But I think that's going to fall right back into the Stanfield case situation where we're looking at arguments about the fact that he was having a problem with a supervisor who wouldn't let him go back to his shift. But because I believe it was done in retaliation, because it came right on the heels of the use of the FMLA, because I think it's Exhibit 6 or Exhibit List, they issued a separate sick leave policy for him. If he doesn't have a private action for violation of FMLA because there's no waiver of sovereign immunity of the federal government, right, where is the waiver of sovereign immunity that allows a retaliation action for the exercise of the FMLA? Because he also filed an EEOC, and this retaliation also applies to it. I realize it's a weak link. I'm trying to get this board to look at this as a first impression. I think you're being very imaginative and inventive. But I think maybe your imagination and inventiveness should be directed to Capitol Hill. It would be nice if I could do that. Unfortunately, when I find out about them, it's a little late for that particular procedure because the employee has already been messed over by the employer. And even if they haven't waived their right to immunity as to the FMLA as to federal workers, I would argue that retaliation falls into a separate and distinct category because there is a large body of law that talks about you can't retaliate against an employee who uses benefits that are provided to him by the law. He used to benefit the FMLA, and they retaliated against him for doing so. Am I right that 29 U.S.C. I'm looking at a secondary source right now, so I may be wrong. Am I right that the federal statute says at 2611 2B1 that the term eligible employee does not include a federal employee and that that applies to your client in this case? I don't know. I don't know. I'd like to reserve the rest of my time. Thank you. Ms. Miller. Good morning again, Your Honors. Mr. Keene, in his district court complaint and in his underlying EEO complaint upon which his district court complaint has to be based, alleged that the shipyard violated the Rehabilitation Act by failing to accommodate him regarding his father's disability. There is absolutely no cause of action under the Rehabilitation Act for accommodating disabilities of family members. The accommodation is of the employee, so there was clearly no cause of action under the Rehab Act for the complaint as stated. Mr. Keene may have had some family medical leave issues. I have no idea what the truth of what he's saying as far as I know. He got all of the leave that he requested, but whether or not he actually had an issue under the Family Medical Leave Act, that statute is very clear that there is no private right of action for federal employees. Postal service employees are covered under Title I. Let me invite your attention and engage your attention. In the third claim in the complaint of the appellant, which talks about, as I understand it, for his claim under the Rehabilitation Act for the father's disability. Now, we all agree that disability, the Rehabilitation Act says for his, pardon me, for her or his, solely for her or his disability. Right. So I think he strikes out as a matter of statutory interpretation. But if he is in good faith, if he is in good faith claiming that he does have a right to an accommodation because of his father's disability, and then he's retaliated against for making a claim which, although statutorily not provided, he makes in good faith, does that not come within the Ninth Circuit doctrine of Moyo v. Gomez? Dr. Reinhart wrote that. Thank you, Your Honor. I understand the question. Yes, under the Rehabilitation Act and under Title VII, you can have a claim for retaliation even if your protected activity was not successful. You might have filed an EEO claim alleging that you've been discriminated in some way and something may be drastically wrong with that particular complaint. It may not be successful. You can still get a cause of action for retaliation assuming you had a good faith belief in bringing your claim. You had a good faith belief. Is that subjective good faith or is it objective good faith? You know, to be perfectly honest, I'm not exactly sure. I would imagine it probably would be a little bit of both. I mean, I argued in my brief that in this case it would be hard to imagine that there would be a good faith belief given that the statute totally doesn't cover this situation. Usually we're in situations where somebody has filed a complaint and they've had a weak complaint and they weren't successful with it, and then the alleged retaliation. Let's take something that's totally, plainly not a good faith claim. I need to take three days off because of my grandmother's funeral. And grandmother died 12 years ago. There isn't any grandmother's funeral. It's just fiction. The employer subsequently retaliates against the person for having made that demand. Is there anything there? I personally would argue no. Under your scenario, I don't think what you're alleging would even be covered by any statute that would give you any sort of right of protection. But assuming that you have filed a claim that is cognizable under some discrimination statute, the fact that you're not successful doesn't impede the retaliation claim. The good faith belief is difficult to argue because there aren't many cases discussing what actually constitutes a good faith belief and when it's totally frivolous. I mean, I argued in this case, because the statute clearly doesn't cover it, that there would be no good faith belief here. The more important issue, though, Your Honor, I don't think you even have to reach the good faith belief part. In this case, Mr. Keene was removed from the swing shift and put on day shift prior to the time he engaged in EEO activity, prior to the time he actually filed his EEO complaint. So it can't possibly give rise to a retaliation claim. In his deposition, he acknowledged that prior to the time he was taken off that swing shift, he had filed an earlier EEO complaint. So there's no nexus here for retaliation. And even if somehow he found that... He's saying I was retaliated against for doing something that I had not yet done doesn't seem any more of a stretch to me than saying I need to be home to take care of my aging sick father when his father's not home. Well, I would agree with that. I mean, he was removed from the shift prior to the time he filed his EEO complaint. So the removal couldn't possibly be retaliation for engaging in EEO activity. And in any event, if anybody even remotely found that he could make a prima facie case of retaliation, the shipyard had a legitimate business reason for removing him from the swing shift, and there was no evidence that that reason was pretextual. He clearly, undisputedly, had a very poor attendance record that was difficult for them to absorb on the swing shift. It was easier for them to absorb his many absences on the day shift. Again, I would be happy to answer any more questions, and I'll rest on my brief. Thank you. Thank you. How about the point that counsel made that he was moved from swing shift to day shift before he made any claim about his derivative disability to his father? I think it's a legitimate argument. I think it's a legitimate argument. But why is that? I mean, causation usually requires at a minimum that the cause happen before the effect. That's why I said it's a legitimate argument. Oh, I thought you said illegitimate. No, I'm sorry. But I do want to answer one question that I answered improperly before. My client's father didn't go into the nursing home until after my client's FMLA leave. So I didn't want to leave that out there with your thinking my client was just doing financial things. He was caring for his father. This is important. What's the date and where is it in the excerpt? Your Honor, I believe it's contained within my client's affidavit, but I will need to give you a citation to it if the court would allow me to send something to the court. We'll let you know if we need something. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Kleinfeld, Bea